IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

DARRAL BELL                                                                           PETITIONER

VS.                                                        CIVIL ACTION NO 3:09cv366-DPJ-FKB

CHRISTOPHER EPPS,
Commissioner                                                                         RESPONDENT

## **REPORT AND RECOMMENDATION**

Darral Bell was convicted of manslaughter in the Circuit Court of Amite County. His conviction was affirmed on appeal. Presently before the Court is his petition for a writ of habeas corpus. Having considered the petition, response, and state court record, the undersigned recommends that habeas relief be denied and the petition be dismissed with prejudice.

## **I. FACTS AND PROCEDURAL HISTORY**

On the evening of October 30, 2004, Darral Bell and LeCedric Hurst became involved in an altercation at the home of Edna Spears, a relative of Hurst. Others present at the home included Kervin Bland, Spears's son; Melvin Bland, Spears's brother; and Tannie Bland, Spears's nephew. Bell testified that Hurst struck him but that he did not strike back. Instead, Bell left in his F350 work truck with Kervin Bland as a passenger and headed down Perry road. Hurst also left in the same direction, riding a four-wheeler. The two vehicles collided, and Hurst was killed.

Officer Anthony Reeves of the Amite County Sheriff's Department responded to the scene of the accident. At Bell's criminal trial, Reeves testified that when he first arrived,

Bell told him that there had been a four-wheeler accident and that Hurst must have hit a tree. Reeves could smell alcohol on Bell and asked Bell whether he had been drinking. Bell admitted to having had three or four beers. Reeves asked him again to tell him what had happened, and Bell walked with him down to Bell's truck, which was parked in a nearby yard. Bell told Reeves that Hurst had tried to pass him and must have hit the mirror on the truck and then glanced off and hit the tree. It was only then that Reeves realized that the accident had also involved the truck and that Bell had been its driver.

Kervin Bland's testimony was that Bell "cut over" on Hurst when Hurst tried to pass the truck. He also stated that he saw Bell look back through the window toward the four-wheeler before cutting over on Hurst. According to Bland, after the truck hit Hurst, it continued to the left and went into a nearby yard. Tannie Bland testified that after Bell got into the truck, he lowered the window and told Hurst to come on up the road because he had something for him. Melvin Bland, Edna Spears's brother, testified to having heard essentially the same statement from Bell. Melvin, who witnessed the collision from the front porch, stated that Hurst was trying to pass Bell when Bell cut over on him. After the collision, Melvin saw Bell's truck go down to the left into a nearby yard.

Bell was arrested later that evening. Two days later, on Monday afternoon, November 1, 2004, Bell was interviewed by Lieutenant Gerald Wall of the Mississippi State Highway Patrol. Wall testified that Bell was read his *Miranda* rights and signed a waiver of them. Bell then gave a statement, which Bell wrote out by hand and signed. Lieutenant Wall read the statement to the jury at trial:

> When I got to Ms. Bland's house, Cedric Hurst and myself was arguing about logging and he slapped me. Ms. Bland asked–Ms. Bland had asked me to leave

2

> and I did so at that time. Cedric followed me out and said he was going to get his gun. In order for me to stop him from getting home, I drove in to the middle of the road to stop him from passing me. As he tried to pass, I would get over until the last time I turned the wheel too far and lost control and caused him to wreck and hit the front wheel of the truck.

Docket no. 15-5, p. 100.

Darral Bell took the stand at trial. He testified that he and Hurst argued and that Edna Spears told them both to leave. Bell pulled off in his truck, with Kervin Bland as a passenger. Once he was on the road, Bell stopped and offered Kervin some Skoal. Bell dropped the can on the floor while he was trying to open it and bent down to pick it up. When he looked up again, Hurst was on the driver's side of the truck. Hurst told him that he knew Bell was going to get a gun and that he would be back before Bell could do so. Bell pulled off, went to the top of the hill, and turned left. He did not notice the four-wheeler. When he made the turn, Bell heard a bump and felt the back of the truck rock. He looked back and saw that the four-wheeler was upside down and that Hurst was lying near it. Bell then pulled the truck into a driveway and went for help.

Three experts, Dr. Steven Hayne, James Hannah and Mississippi Highway Patrol Officer Cecilia Kazery, testified at trial. Dr. Hayne, who performed the autopsy on Hurst, opined that Hurst died from massive internal injuries and that those injuries were consistent with injuries one would receive in a truck and four-wheeler crash where the truck ran over the decedent. Hannah, the defense's accident reconstructionist, opined that the initial impact point was near the driver's door on the truck. It was his opinion that Bell had stayed in the right lane and never swerved over toward Hurst. Testifying for the state in rebuttal was Officer Cecilia Kazery, also an accident reconstructionist. She

3

opined that the initial impact point was at the truck's left fender and that the front left tire then went over the upper portion of Hurst's body. According to her investigation, after colliding with the four-wheeler, Bell's truck continued on into a nearby yard.

The jury convicted Bell of the lesser-included offense of manslaughter, and the court sentenced him to a term of fifteen years with ten years to serve and five to be served on post-release supervision. The Supreme Court of Mississippi affirmed. *Bell v. State*, 963 So. 2d 1124 (2007).

Bell raises the following grounds for relief in his § 2554 petition:

1. The trial court erred in allowing testimony of prior bad acts.

2. The trial should have dismissed the case because there was no probable cause for the underlying arrest.

3. The state violated discovery rules.

4. The state violated Bell's *Miranda* rights.

## II. ANALYSIS

In ground one, Bell argues that the prosecution improperly elicited testimony from officers that Bell committed a crime by driving in the middle of the road. According to Bell, this testimony violated Rule 404 of the Mississippi Rules of Evidence. A state court's evidentiary ruling presents no basis for habeas relief unless the ruling runs afoul of a specific constitutional right or renders the trial fundamentally unfair. *Johnson v. Puckett*, 176 F.3d 809, 820 (5th Cir. 1999). The Fifth Circuit has described the standard for fundamental unfairness in this context as a high one, affording relief only where the challenged evidence was "the principal focus at trial." *Gonzales v. Thaler*, 643 F.3d 425,

431 (5th Cir. 2011). Evidence that Bell's driving in the middle of the road constituted a crime falls far below this standard. Furthermore, the trial court gave a curative instruction, admonishing the jury to disregard the testimony. Bell's argument raises only an issue of state evidentiary law, not a cognizable constitutional claim.

In ground two, Bell argues that his arrest was without probable cause and therefore in violation of the Fourth Amendment. Fourth Amendment violations generally do not provide a basis for federal habeas relief. In *Stone v. Powell,* 428 U.S. 465, 482 (1976)*,* the Supreme Court held that a state prisoner is not entitled to habeas relief based upon the admission of evidence seized in violation of the Fourth Amendment if the state has provided an opportunity for full and fair litigation of the Fourth Amendment claim. The *Stone* principle also applies to Fourth Amendment claims challenging probable cause for an arrest. *Lucas v. Johnson*, 132 F.3d 1069, 1083 (5th Cir. 1998). Bell raised his Fourth Amendment issue on direct appeal, where it was considered and rejected. Thus, it is clear that Bell was given the requisite full and fair opportunity in the present case. For this reason, habeas review of ground two is precluded.

On direct appeal, the Mississippi Supreme Court rejected the claim asserted in ground three, *i.e.*, that the state violated discovery rules, as procedurally barred because the defense had failed to object or request a continuance at trial. Where a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claims will result in

a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Petitioner has failed to offer any argument as to the applicability of either of these exceptions, and the undersigned can discern none. Accordingly, this court may not consider the merits of ground three.

Bell's remaining claim was adjudicated on the merits by the Mississippi Supreme Court and is therefore subject to the highly deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254(d), which allows habeas relief in this case only if the state court's rejection of this claims involved "an unreasonable application of . . . clearly established Federal law . . . as determined by the Supreme Court of the United States" or "an unreasonable determination of the facts" in light of the evidence presented to the state court. *Id.* The Supreme Court has repeatedly emphasized that " 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 410 (2000)). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, the application must be not only incorrect, but also "objectively unreasonable." *Renico,* 130 S.Ct. at 1862 (quoting *Williams*, 529 U.S. at 409).

In ground four, Bell contends that his *Miranda* rights were violated, or, to state his claim more precisely, that his written statement was inadmissible because he had not knowingly and voluntarily waived his *Miranda* rights. At the hearing on the motion to

6

suppress, the trial court heard testimony from Sergeant John Stoll and Lieutenant Wall regarding the circumstances surrounding the taking of the statement. Lieutenant Wall and Sergeant Stoll testified that Wall read Bell his Miranda rights and witnessed Bell's signature on the waiver form prior to taking any statement from him. They stated that Bell handwrote the statement himself, that he was not coerced into making the statement, and that no promises were made. The defense put on no witnesses at the hearing. Based upon the evidence, the trial court found that Bell waived his *Miranda* rights prior to giving the statement and that the statement was voluntary.

Interestingly, even though Bell did not testify at the suppression hearing, he nevertheless testified at trial that he was coerced into writing and signing the November 1, 2004, statement. He stated that at the time he made the statement, he had been held in jail for three days without knowing what he was charged with and that he had not been fed adequately.[1] He claimed that the officers threatened him with life imprisonment if he did not write down what they dictated to him. According to Bell, he did not sign the waiver form until after he had written and signed the statement.

Due process requires that a confession of a criminal defendant be voluntary and not the result of coercion. *Self v. Collins*, 973 F.2d 1198, 1205 (5th Cir. 1992) (citing *Miller v. Fenton*, 474 U.S. 104, 109 (1985); *Broward v. Mississippi*, 297 U.S. 278 (1936)). In addition, the procedural safeguards established in *Miranda v. Arizona*, 384 U.S. 436 (1966), protect an accused's privilege against self-incrimination during custodial interrogation. *Id.* The determination as to whether an accused has waived his *Miranda*

---

[1] Bell insisted that the interview occurred on Tuesday, November 2, 2004. All of the other evidence indicates that it occurred on November 1.

7

rights is to be analyzed by consideration of the "totality of the circumstances surrounding the interrogation." *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

Using the "totality of the circumstances" approach, the state court concluded that Bell's waiver of his rights was voluntary and that the confession was therefore admissible. Credible evidence established that Bell received Miranda warnings prior to his confession, and that he signed a *Miranda* rights form, indicating that he understood his rights and that he wanted to give a statement. Bell gave no testimony to the contrary at the suppression hearing. While Bell did testify to the contrary at trial, the appellate court could reasonably have concluded that this testimony was not credible, given the other evidence. The state court's factual findings were reasonable in light of the evidence presented, and the court likewise reasonably applied the Supreme Court's "totality of the circumstances" analysis. This issue does not warrant habeas relief.

### III. CONCLUSION

Petitioner has failed to establish that the state court's adjudication of his claim regarding admission of his confession was contrary to, or involved an unreasonable application of, clearly established Supreme Court law. His remaining claims either fail to state a claim for habeas relief or are procedurally barred. Accordingly, the undersigned recommends that habeas relief be denied and the petition be dismissed with prejudice.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that

8

party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636; Fed. R. Civ. P. 72(b); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 13th day of July, 2012.

                                        /s/ F. Keith Ball
                                        UNITED STATES MAGISTRATE JUDGE